1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Collette Stark
2175 Cowley Way
San Diego, CA 92110
(619) 347-0726
videosolutions@me.com

Plaintiff in Pro Per

**FILED**

Jan 14 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                 s/ MelssaE                DEPUTY

# THE UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

Collette Stark, an individual,
                    Plaintiff,

        vs.

Smart Solar Marketing, a California
corporation, dba Enver Improvements;

Benson Kane; an individual and as an
officer of Smart Solar Marketing;

Enver Energy, Inc., a California
corporation;

Enver Solar, Inc., a California
corporation,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No.  **'19CV0091 DMS WVG**

**COMPLAINT**

1. **TCPA 47 USC §227(b)(1)(A)**
2. **TCPA 47 USC §227(c)(5)**
3. **CIPA PC §637.2 and §637.2**

**JURY TRIAL DEMANDED**

May it please the Court, Plaintiff Collette Stark (herein "Plaintiff" or

"Stark"), for this complaint against Defendants Smart Solar Marketing (dba Enver

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 1

19CV

Improvements) and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents (herein "Solar Marketing"); and Benson Kane, (herein "Kane") an individual and as officer of Smart Solar Marketing (also known as Benson Wenceslaus Kane, III), Enver Energy, Inc., a California corporation (herein "Enver Energy"), and Enver Solar, Inc., a California corporation (herein "Enver Solar"), alleges as follows:

## I.    INTRODUCTION

1.    In 2016, Anton Ewing sued Benson Kane and each of his Enver corporations for illegal telemarketing in Superior Court in San Diego.  Normally getting sued by Mr. Ewing is enough of a wake-up call to any telemarketer to cease and desist. But not for Mr. Kane.  Too much money to be made by being a scofflaw and harassing American citizens with robo-dialers.  Then, in 2017, Todd Friedman's law firm sued Enver Solar in a TCPA class action in the Central District, case number 17-CV-01778-JVS-DFM.  Kane settled that lawsuit but he still didn't get the hint.  Attorney George Hampton and his partner Colin Holley represented Kane/Enver in each of those matters.  They will likely represent Kane and the Enver entities here as well.  One has to wonder what kind of advice they are giving to Mr. Kane.

2.    The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the

use of an ATDS is expressly alleged against Defendants Smart Solar Marketing and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents; and Benson Kane, an individual and as officer of Smart Solar Marketing, Enver Energy, Inc., and Enver Solar, Inc.

3.     The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal recording of the telemarketing call to Plaintiff's phone without disclosure of the recording is alleged against Defendants Smart Solar Marketing and its present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents; and Benson Kane, an individual and as officer of Smart Solar Marketing, Enver Energy, Inc., and Enver Solar, Inc.

4.     <u>Nature of Action</u>.  Something is rotten in Tustin, to wit: Smart Solar Marketing, Enver Energy, Enver Solar and Kane have been bombarding Ms. Stark, without her consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS as defined by the 9th Circuit in the *Crunch*[1] case.  Ms. Stark begged Smart Solar Marketing, and Kane to stop these illegal calls, but since then, Defendants Smart Solar Marketing, Enver Energy, Enver Solar and Kane and its hired and controlled agents have robocalled Plaintiff 18 more times.  It does not appear that these defendants are going to stop calling nor obey the DNC registry and thus this lawsuit is necessary.  Ms. Stark brings this

---

[1] *Jordan Marks vs. Crunch San Diego, LLC*, 14-56834 (filed September 20, 2018) by Judge Ikuta

action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"),

in hopes that an injunction and damages will encourage Smart Solar Marketing,

Enver Energy, Enver Solar and Kane to change their ways.   The Court needs to

make illegal telemarketing more expensive than actually complying with the law.

## II. PARTIES

5.      Plaintiff Collette Stark is a citizen of California who resides in and conducts

business in California, in this District.

6.      Defendant SMART SOLAR MARKETING is a California corporation

organized under the laws of California on 2/4/2013 with its principal place of

business located at 17542 17TH STREET, SUITE 175, Tustin, CA 92780.  SMART

SOLAR MARKETING does business in this District and throughout the United

States.

7.      SMART SOLAR MARKETING is vicariously liable for the acts of its

telemarketing lead brokers because SOLAR MARKETING told, instructed and

ordered them to telephone solicit Stark at 619-347-0726 multiple times.  SOLAR

MARKETING hired others, including 'Patricia' and 'Harry', to illegally call

Plaintiff multiple times and then, eventually provided the information on Plaintiff

to its agents who again violated the TCPA and illegally telemarketed Plaintiff with

an ATDS.

8.      SOLAR MARKETING has knowingly and intentionally hired, directed and

ordered it agents to obtain merchant cash advance and loan leads and appointments

through telemarketing activities in violation of the federal TCPA, and CIPA laws

of California.

9.     Upon information and belief, Kane is the sole owner, officer, and director of

Smart Solar Marketing and has caused said entity to violate 47 USC §501 (a statute

making TCPA violations via an ATDS a criminal act).  Therefore, Kane is

personally liable for the acts and actions of said entity.

10.    Defendant Kane cannot create, operate and run a corporation to commit,

engage in and conspire to violate criminal laws, including federal and state

misdemeanors.

### III. JURISDICTION AND VENUE

11.    <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over

the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a

federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This

Court has supplemental subject matter jurisdiction over the Plaintiffs' claim arising

under California's Unfair Competition Law ("UCL"), Civil Code

§1770(a)(22)(A)[2],  and California Invasion of Privacy Act, Penal Code §637.2,

§632.7 because those claims:

---

[2] Plaintiff is not expressly propounding a cause of action for Civ. §1770(a)(22)(A) or B&P §17200 at this time, but rather is merely putting Defendants on notice that leave to amend will be sought after discovery.  A motion to dismiss these as causes of action would be frivolous and sanctionable under Rule 11.

   a. arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff;

   b. adds little complexity to the case; and

   c. relies on the same nucleus of facts, so it's unlikely to predominate over the TCPA claims.

12.   <u>Personal Jurisdiction.</u> This Court has personal jurisdiction over Smart Solar Marketing, Enver Energy, Enver Solar and Kane because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Solar Marketing, Enver Energy, Enver Solar and Kane made illegal telemarketing robocalls from 714-335-5262 to Ms. Stark, while she was in California.   A person by the name of Patricia works for Solar Marketing and has repeatedly called Plaintiff claiming to be with "Enver Improvements."

13.   "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing *Panavision*, 141 F.3d at 1320). Due process requires that Solar Marketing and

Kane must have minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

14.     There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted).  To establish specific jurisdiction, Plaintiff must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice,

19CV

i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found specific jurisdiction in circumstances similar to this case. One court found personal jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009).

15.    <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because Smart Solar Marketing, and Kane are required to be registered with the California Secretary of State and do substantial business in this District. Solar Marketing and Kane have purposefully directed activities to California and advertises that it does business in California.

**IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

16.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

17.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a … cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii).

18.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

20.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), available at https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commissionrules-regulations/160616robocallscomment.pdf.

21.     In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftcreleases-fy-2017-

national-do-not-call-registry-data-book-dnc.

22.     The dialing system used by Solar Marketing and Kane is the Five9 predictive dialer, a dialing system that is subject to the TCPA's ATDS protections.

23.     The Five9 predictive dialer works by loading a list of telephone numbers electronically into the dialer, and with the push of a single button, calls are made automatically and sequentially from that list.

24.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

25.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

26.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

27.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

28.     According to findings of the FCC, the agency vested by Congress with

authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

29.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

30.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

31.     FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter*

*of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

32.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

33.     The 9th Circuit has defined an ATDS as follows: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."

34.     Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Recipients deemed that "automated telephone

calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No. 102-178, at 4.

35.     The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556). The Federal Communications Commission ("FCC")— which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012). Because the Defendant has violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendant has committed the criminal violation of 47 U.S.C. §501.

36.     "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012). Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail

messages at a number assigned to a cellular telephone service using an automatic

dialing system or an artificial or pre-recorded voice." Id. (denying motion to

dismiss for failure to state a claim where the plaintiff alleged "that [the]

[d]efendants used an Automatic Telephone Dialing System or an artificial or pre-

recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

37.   Plaintiff Stark alleges that Defendants Solar Marketing, Enver Energy,

Enver Solar and Kane placed repeated automated telephone calls to Plaintiff

Stark's cell phone (619-347-0726) from Defendant Solar Marketing, Enver

Energy, Enver Solar and Kane phones and that the calls exhibited signs of being

made with an Automated Telephone Dialing System, including repeated

telemarketing calls to Plaintiff Stark within a period of time and the presence of a

pause or click (which is proven by the recording), which is commonly associated

with an Automated Telephone Dialing System (ATDS).  Those allegations are true

and are sufficient to establish the elements of a TCPA claim.  Defendants Smart

Solar Marketing, Enver Energy, Enver Solar and Kane telemarketing agents also

admitted on the call that they used an ATDS to initiate the dialing of the call to

Plaintiff Stark.

38.   Fictitious defendant ABC, Inc (a Doe Defendant to be named after discovery

reveals the same) that was hired by Smart Solar Marketing, Kane to knowingly and

intentionally make robo-dialed calls to Plaintiff Stark with a pre-recorded voice

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 14

message that was used for telemarketing purposes between approximately

September 1, 2016 and January 12, 2019.  ABC, Inc has subsequently made illegal

telemarketing calls to Stark and discovery may very well lead to adding ABC, Inc

as a defendant herein.

39.     California Civil Code section 1770(a)(22)(A) prohibits prerecorded

telemarketing messages.

40.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA

case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for
> its provisions limiting junk-fax transmissions.  A less-litigated
> part of the Act curtails the use of automated dialers and
> prerecorded messages to cell phones, whose subscribers often
> are billed by the minute as soon as the call is answered--and
> routing a call to voicemail counts as answering the call.  An
> automated call to a landline phone can be an annoyance; an
> automated call to a cell phone adds expense to annoyance.
> *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012)*

41.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a

pro se complaint, "however inartfully pleaded," must be held to "less stringent

standards than formal pleadings drafted by lawyers" and can only be dismissed for

failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief.'" Id., at 520-

521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v.*

*Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

# V. STANDING

42.     The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, her complaint "must be held to less stringent

standards than formal pleadings drafted by lawyers" and must be "liberally

construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming

pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's

treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se

pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338,

342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir.

2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v.

Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and

*Iqbal*, "we remain obligated to construe a pro se complaint liberally").

43.     Standing is proper under Article III of the Constitution of the United States

of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendants Solar Marketing, Enver

       Energy, Enver Solar and Kane;

    C. and is likely to be redressed by a favorable judicial decision.  See,

       *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders*

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 16

19CV

*of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong.**

44.   Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on her cellular phone at least eighteen (18) times by Defendants Smart Solar Marketing, Enver Energy, Enver Solar and Kane.  In fact, Plaintiff expressly informed Defendants Smart Solar Marketing, Enver Energy, Enver Solar and Kane to cease and desist from all future telemarketing on the very first calls they made.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry (hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with Defendants Smart Solar Marketing, Enver Energy, Enver Solar and Kane prior to receiving the seriously harassing and annoying calls. All of Plaintiff's injuries are concrete and de facto. For an injury to be

"particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.

In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by Defendants Smart Solar Marketing, Enver Energy, Enver Solar and Kane persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendant Solar Marketing, Enver Energy, Enver Solar and Kane and Plaintiff's attempt to avoid the damage by registering her number on the DNC Registry.  Plaintiff also sent emails to Kane's attorney in 2018 demanding that Kane cease and desist from telemarketing.

**The "Traceable to the Conduct of Defendant" Prong**

45.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that her injury is traceable to the conduct of Defendant Smart Solar Marketing, Enver Energy, Enver Solar and Kane.  In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone were placed either by Defendant Enver Energy, Enver Solar and Kane directly, or by Defendant' agent at the express direction and control of Defendant Smart Solar

Marketing.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten

factor test[3] from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

46.     The third prong to establish standing at the pleadings phase requires Plaintiff

to allege facts to show that the injury is likely to be redressed by a favorable

judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a

request for damages for each call made by Defendant Smart Solar Marketing,

Enver Energy, Enver Solar and Kane, as authorized by statute in 47 U.S.C. § 227.

The statutory damages were set by Congress and specifically redress the financial

damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request

injunctive relief to restrain Defendant Solar Marketing, Enver Energy, Enver Solar

and Kane from the alleged abusive practices in the future. The award of monetary

damages and the order for injunctive relief redress the injuries of the past and

prevent further injury in the future. Because all standing requirements of Article III

of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578

---

[3] 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

U.S. ___ (2016), Plaintiff has standing to sue Defendant Solar Marketing and Kane on the stated claims.

47.    "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing. See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id.  *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

48.    "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite

distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

49.    The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3). Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express

consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).  In the Ninth Circuit, a

plaintiff must show: (1) "the defendant called a cellular telephone number; (2)

"using an automatic telephone dialing system; (3) without the recipient's prior

express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043

(9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of

the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S.

Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

50.     First, a text message and a prerecorded robotic voice message call are both a

"call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 952-54 (9th Cir. 2009).  Plaintiff supports these allegations with activity logs

from September 2016 to January 2019 documenting the calls. This element is

satisfied.  To wit:

```
(714) 640-2344  February 28, 2018 at 2:15PM
(714) 640-2344  February 28, 2018 at 3:12PM
(714) 640-2344  February 28, 2018 at 3:16PM
(714) 640-2344  February 28, 2018 at 3:17PM
(714) 640-2344  February 28, 2018 at 3:18PM
(714) 640-2344  February 28, 2018 at 3:19PM
(714) 640-2344  February 28, 2018 at 3:20PM
(714) 640-2344  February 28, 2018 at 4:13PM
(714) 640-2344  March 1, 2018 at 8:52AM
(562) 451-8076  January 11, 2019 10:18AM – Harry at Green Energy Management
then live transfer to Enver with Patricia.
```

51.     Second, Plaintiff adequately pleads use of an automatic telephone dialing

system ("ATDS").  The TCPA defines ATDS to mean "equipment which has the

capacity — (A) to store or produce telephone numbers to be called, using a random

or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §

227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this

function. *See Satterfield*, 569 F.3d at 951. "Accordingly, a system need not

actually store, produce, or call randomly or sequentially generated telephone

numbers, it need only have the capacity to do it." *Id.* Defendant called with a

prerecorded message, which, by definition requires an auto-dialer that operates

without human intervention.

52.    "In proving a defendant's use of [an] ATDS under the TCPA, courts have

recognized the difficulty a plaintiff faces in knowing the type of calling system the

defendant used without the benefit of discovery." *Charkchyan*, 2015 U.S. Dist.

LEXIS 76560, 2015 WL 3660315 at *3.  For example, in *Charkchyan*, the

plaintiff's allegations supported the use of an ATDS. *Id.*  In that case, the plaintiff

described the messages received "as being formatted in SMS short code, '670-76,'"

and as being impersonally scripted. *Id.*  This was enough to establish the defendant

used an ATDS. *Id.*   Similarly, in *Kramer v. Autobytel*, the plaintiff alleged

sufficient facts to support a reasonable inference that the Defendant used an

ATDS: "[The plaintiff] described the messages from SMS short code 77893, a

code registered to [a defendant]. The messages were advertisements written in an

impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with

the Defendant." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the

plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015).

53.    Here, Plaintiff alleges that Defendant Solar Marketing, Enver Energy, Enver Solar and Kane contacted her using an "automatic telephone dialing system."  This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant Solar Marketing, Enver Energy, Enver Solar and Kane products. Third, Plaintiff declares that she has never heard of Defendant Solar Marketing, Enver Energy, Enver Solar and Kane, visited any location operated by Defendant Solar Marketing, Enver Energy, Enver Solar and Kane prior to the harassing and annoying calls, nor provided her cellular telephone numbers to Defendant Solar Marketing, Enver Energy, Enver Solar and Kane or consented to receive calls from Defendant Solar Marketing, Enver Energy, Enver Solar and Kane.  Plaintiff never went to any web page to sign up with or consent to calls by Defendant Solar Marketing, Enver Energy, Enver Solar and Kane.  Plaintiff also

19CV

has had no prior business relationship with Defendant Solar Marketing, Enver

Energy, Enver Solar and Kane.  Plaintiff had no reason to be in contact with

Defendant Solar Marketing, Enver Energy, Enver Solar and Kane nor has she ever

purchased any kind of product or service from Defendant Solar Marketing, Enver

Energy, Enver Solar and Kane or its lead source. Plaintiff's allegations are

sufficient to establish that Defendant Solar Marketing, Enver Energy, Enver Solar

and Kane used an ATDS in sending their prerecorded solicitation messages and in

making live telemarketing calls to Plaintiff.

54.      Third, Plaintiff adequately pleads that the conduct was without her prior

express consent. "Prior express consent" under the TCPA is "consent that is clearly

and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S.

Dist. LEXIS 76560, 2015 WL 3660315 at *3.  Moreover, "[t]he Federal

Communications Commission ('FCC'), tasked with instituting implementing

regulations for the TCPA, added an express *written* consent requirement in the case

of messages that 'include[] or introduce[] an advertisement or constitute[]

telemarketing.'"  *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S.

Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47

C.F.R. § 64.1200(a)(2)).  An "advertisement" includes "any material advertising

the commercial availability or quality of any property, goods, or services." 47

C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or

message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(12).

55.     In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he [had] never provided his cellular number to [the defendant], nor consented to receiving calls from [the defendant]." *Id.* Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

56.     Similarly, in Plaintiff's case, the allegations establish that she did not give prior express consent. She declared that she was "the regular user and subscriber to the cellular telephone number at issue." She also declared that she has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant,] or consented to receive text messages from [Defendant]." As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that she did not give prior express consent authorizing Defendant Smart Solar Marketing to send the prerecorded messages. Furthermore, the calls promote the sender's illegal solar panel business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent

was required, and there is no evidence of such. This element is consequently satisfied.

57.     Fourth, Plaintiff sufficiently pleads that she was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiff declares that she was "the regular user and subscriber to the cellular phone number" that received the calls and messages. Plaintiff is therefore the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

## VI. FACTUAL ALLEGATIONS

### A. SMART SOLAR MARKETING

58.     One of SMART SOLAR MARKETING's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

59.     SMART SOLAR MARKETING uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing

system" or "ATDS").  Plaintiff heard a balloon popping sound along with a pause and a click at the beginning of each telemarketing call made to Plaintiff by the lead company and by SOLAR MARKETING.

60.     A lead company sold leads to SOLAR MARKETING.  Defendant Smart Solar Marketing knows of and is aware of each of the other Defendant's duties, responsibilities and function within the telemarketing operation.  Defendant Smart Solar Marketing is a co-conspirator with each other Doe Defendants in this matter. They all know each other, they all talk to eachother.  They have all designed, planned and orchestrated the telemarketing scheme and scam together.

**B. Plaintiff**

61.     Plaintiff Collette Stark is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**C. Telephone number 619-347-0726**

62.     A phone number beginning 619-347-0726 is registered to Ms. Stark.

63.     619-347-0726 is on the National Do Not Call Registry.

64.     Ms. Stark answers calls made to 619-347-0726.

65.     Ms. Stark pays the phone bills for 619-347-0726.

**D. Smart Solar Marketing's Illegal Telemarketing Robocalls to Plaintiff**

66.     On the exact dates and times stated above Defendant Solar Marketing called to 619-347-0726, which is Ms. Stark's cellular telephone, and caused her cell

19CV

phone to ring. Ms. Stark picked up. The person on the other end wasn't anyone Ms. Stark knew.  In fact, it wasn't a person at all; it was a prerecorded voice. The voice advertised home improvement services.

67.     Prior to 2016, Plaintiff had never heard of Solar Marketing, Enver Energy, Enver Solar and Kane and had not given permission to call her, let alone with a telemarketing robocall.  Ms. Stark was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call Registry.  On November 11, 2019, a call to 619-347-0726 caused Ms. Stark's cell phone to ring again, from 562-451-8076.  Again it was a prerecorded voice, again advertising home improvement services, again from Solar Marketing and Kane.

68.     It didn't stop there. *SOLAR MARKETING placed at least 18 more telemarketing robocalls to Ms. Stark.*  The calls on January 11, 2019 came from 562-451-8076 which turns out to be totally spoofed phone numbers.  The agent on the phone said he was with SMART SOLAR MARKETING.

69.     Kane fraudulently uses Smart Solar Marketing to evade the TCPA's telemarketing laws.  Kane has many different corporations in order to hide, obfuscate and misleading those that he harms in order to conceal his true identity.

70.    Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Ms. Stark that the call was placed by an ATDS rather than manually dialed by a person.

71.    Eighteen of SMART SOLAR MARKETING's telemarketing robocalls were made to Ms. Stark while she was in California, in this District.

72.    More than a dozen of SMART SOLAR MARKETING's telemarketing robocalls were made to Ms. Stark after SMART SOLAR MARKETING knew of her desire to never be solicited via telemarketing calls, which is publicly known in this District.

73.    Ms. Stark repeatedly asked Solar Marketing, Enver Energy, Enver Solar and Kane to stop calling.

74.    Due to the massive volume of robocalls made by Defendant Solar Marketing, Enver Energy, Enver Solar and Kane to her, Plaintiffs' investigation into the calls and their illegal features (e.g., prerecorded voices and placement by an ATDS, as manifested by beginning with an unnatural click or pause) is ongoing. Based on what is known to Plaintiff so far, the above table summarizes some of the non-emergency telemarketing robocalls placed by Solar Marketing and Kane to Plaintiff.

19CV

There were additional calls because the 01/11/2019 calls demonstrated that the caller already had personal information of Plaintiff including her name and address.  Discovery will force Defendants to provide evidence on the prior calls.

### VII. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

75.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

76.    The foregoing acts and omissions of Solar Marketing, Enver Energy, Enver Solar and Kane and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone number of Plaintiff without prior express written consent.

77.    Defendant Solar Marketing, Enver Energy, Enver Solar and Kane in this matter is vicariously liable for the acts and actions of each of the other Doe Defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.

78.    Plaintiff has no pre-existing business relationship with Defendant Solar, Enver Energy, Enver Solar Marketing and Kane.

79.    Defendant Solar Marketing, Enver Energy, Enver Solar and Kane are not a non-profit or not-for-profit entity.

19CV

80.     Defendant Solar Marketing, Enver Energy, Enver Solar and Kane are not a political organization.

81.     Defendant Solar Marketing, Enver Energy, Enver Solar and Kane were not taking a poll or vote.

82.     Defendant Solar Marketing, Enver Energy, Enver Solar and Kane were not attempting to collect on a student loan.

83.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

84.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

85.     Plaintiff also seeks a permanent injunction prohibiting Solar Marketing, Enver Energy, Enver Solar and Kane and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## VIII. SECOND CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))

86.     Ms. Stark realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

87.     The foregoing acts and omissions of Solar Marketing, Enver Energy, Enver Solar and Kane and/or its affiliates or agents constitute multiple violations of the

TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-347-0726 number of Ms. Stark without prior express written consent.

88.     Plaintiff has no pre-existing business relationship with any of the Defendants.

89.     Defendants are not a non-profit or not-for-profit entity.

90.     Defendants are not a political organization.

91.     Defendants were not taking a poll or vote.

92.     Defendants were not attempting to collect on a student loan.

93.     Ms. Stark is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

94.     Ms. Stark is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

95.     Ms. Stark also seeks a permanent injunction prohibiting Solar Marketing, Enver Energy, Enver Solar and Kane and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA AND CIPA - 33

19CV

# IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

96.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97.     The foregoing acts and omissions of Solar Marketing, Enver Energy, Enver Solar and Kane and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

98.     Plaintiff has no pre-existing business relationship with any of the Defendant.

99.     Defendants are not a non-profit or not-for-profit entity.

100.    Defendants are not a political organization.

101.    Defendants were not taking a poll or vote.

102.    Defendants were not attempting to collect on a student loan.

103.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

104.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

105.    Plaintiff also seeks a permanent injunction prohibiting Solar Marketing, Enver Energy, Enver Solar and Kane and its affiliates and agents from making

19CV

telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants Solar Marketing, Enver Energy, Enver Solar and Kane and Doe Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Solar Marketing, Enver Energy, Enver Solar and Kane violated the TCPA and CIPA;

C. An order enjoining Solar Marketing, Enver Energy, Enver Solar and Kane and its officers, partners, employees, affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiff of damages, as allowed by law under the TCPA, and not limited to the calls listed in the preliminary table above;

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

J. For an injunction prohibiting Defendants Solar Marketing, Enver Energy, Enver Solar and Kane from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

K. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a DNC registered number;

L. $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy of written do not call policy;

N. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of business at beginning of call;

O. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing call to cellular phone;

P. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone

   number on the DNC registry; and

R. For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  January 12, 2019

/S/ *Collette Stark*
Collette Stark, Plaintiff